GLICKSTEIN, Judge.
This is an appeal of a partial summary final judgment in a class action suit in favor of the defendant. Having duly considered the supplemental briefs we requested of the parties, we find this court has jurisdiction. We reverse and remand with direction to proceed in a manner consistent herewith.
Twelve unit owners in Cresthaven Villas Condominiums, who have held interests in those units in the period since June 4, 1975, have maintained this class action against Retirement Builders, Inc., a management company. Count I of plaintiffs’ amended complaint was a demand for damages for increases in the charges collected by the management company, which increases were determined in a set manner from changes in a particular Consumer Price Index (CPI).
The defendant submitted to the trial court a motion for summary judgment accompanied by a great number of attachments. Among these were affidavits of an attorney and of defendant’s president, and various exhibits, including a summary of the effective dates for management agreements with 35 different condominiums at *623 Cresthaven, a representative copy of these agreements, a representative declaration of condominium, a deed form, the buyer’s receipt, approval and ratification form, and a statement of management services.
The trial court granted partial final summary judgment as to Count I of the amended complaint to the defendant. This appeal followed.
Cresthaven consists of some thirty-five condominiums each with its own condominium association. The plaintiffs in the class action are or have been owners of units located in several of these condominiums.
Retirement Builders, Inc. owns five clubhouses and other recreational facilities at Cresthaven. These facilities were built by Retirement Builders, using its own funds and not those of the developer or proceeds from unit sales. Retirement Builders has an agreement with each of the condominium associations, under which Retirement Builders performs the associations' respective management duties. These agreements were executed on various dates from January 10, 1967 to August 30, 1974, and each was for a term of approximately twenty years. There are five groups of seven associations each, known as neighborhoods. The expiration date of the management agreements is the same for all the associations in a neighborhood.
David and Albert Yorra, respectively president and secretary of Retirement Builders, held the same titles in the developer, Cresthaven Enterprises, Inc., which is not a party, and also served as the first officers of each of the condominium associations.
According to the provisions of the membership and use agreement and the management agreement, each unit owner has membership in and the right to use the recreational facilities. There is no lease as such.
The management agreement is attached to and made a part of the declaration of condominium. Paragraph 42 of the management agreement states the declaration and exhibits attached thereto, together with the management agreement, constitute the entire agreement between the parties to the management agreement. Paragraphs 25, 32 and 43 also contain language tying the management agreement and the declaration to each other.
The declaration provides that during the term of the management agreement the management firm will manage the condominium properties, determine the amounts of assessments, and collect the assessments from unit owners; and the management firm may claim a lien against a unit if assessments are not paid. Paragraph VI of the declaration says there shall be no common surplus except as set forth in the documents, including the management agreement. Paragraph 27 of the management agreement provides that the monthly assessment shall never be reduced, but may be increased, during the term of the agreement, and there shall be no common surplus except where otherwise specifically provided in the documents. The only such other specific provision is found in the insurance provisions in Article XII of the declaration. There it is stated that if the insurance proceeds plus any special assessments for repair following a casualty loss exceed the cost of repair, the surplus may be distributed among the beneficial owners.
Paragraph 31 of the management agreement states the bases for annual increases, namely rise in cost of several specific expenditure areas, such as taxes, insurance and labor costs. Paragraph 31(g) allows an increase based on a specified cost of living formula, namely the CPI — United States City Average All Items and Commodity Groups. The sole basis for increase of the charges to unit owners in the period from 1967 through 1980 was this consumer price index (CPI).
The submission statement, which is found in the first article of the declaration of condominium, states that the developer/owner submits the subject realty with its improvements to condominium ownership, “pursuant to the Condominium Act of the State of Florida, F.S. 711 Et Seq. (hereinafter referred to as the “Condominium Act”), and the provisions of said Act are hereby incorporated herein thereby....”
*624 The issue restated is whether the trial court erred in granting appellee summary judgment on a claim that the annual escalation of management charges to condominium unit owners violates statutory changes in the Florida Condominium Act adopted subsequently to the condominium declaration, inasmuch as. the declaration adopts subsequent changes; the declaration and the twenty year management agreement each respectively incorporates the other, and the management firm retains all surplus with one unlikely exception. We conclude that it did.
Whether appellee is subject to changes in the Florida Condominium Act made subsequently to the execution of its management agreement(s) depends on whether appellee agreed to the incorporation of subsequent statutory amendments. Such incorporation is, in our opinion, stated in the declaration^) of condominium. The trial court either saw no such incorporation or did not find that the management agreement incorporated the declaration.
Appellants point out paragraph 42 of the management agreements, which is as follows:
This instrument, together with the Declaration of Condominium to which this Agreement is attached, and the Exhibits attached to said Declaration of Condominium, including this Agreement, constitute the entire agreement between the parties hereto, as of the date of execution hereof, and neither has been induced by the other by representations, promises or understandings not expressed herein, and there are no collateral agreements, stipulations, promises or understandings whatsoever, in any way touching the subject matter of this instrument, or the instruments referred to herein, which are not expressly contained therein.
In the declaration of condominium at article I, definition G, appears the following:
Condominium Act, means and refers to the Condominium Act of the State of Florida (F.S. 711 Et Seq.), as the same may be from time to time amended.
If, as shown earlier, article I of the condominium declaration incorporates the Condominium Act, and that Act is defined as above; and if paragraph 42 — and perhaps paragraphs 25, 32 and 43 as well — of the management agreement incorporates the condominium declaration in the management agreement, then it follows that subsequent amendments to the Condominium Act are a part of the contract between the parties.
In Kaufman v. Shere, 347 So.2d 627 (Fla. 3d DCA 1977), on which appellants rely in part, the declaration of condominium expressly stated it adopted and included by express reference the Condominium Act as it may be amended from time to time. Id. at 628. Accordingly, the District Court of Appeal held that the condominium declaration incorporated then section 711.-236, which declared void and prohibited enforcement of escalation clauses in condominium recreation leases. (The section involved in the instant case is section 718.-302(5), formerly section 711.231, which makes a similar declaration as to management contracts.) Appellee urges that it is significant that in Shere the recreation lessor and the developer were the same party. This distinction is not, in our opinion, of any importance when it is clear that the declaration, as in the instant case, incorporates future statutory amendments, and the management contract incorporates the declaration, as is the case here.
Appellee places reliance on the fact that here we have, not a net fee contract, but one in which an escalator provision is applicable to the total fee covering all services and facilities supplied by the management company. Appellee contends (as we construe its argument) that fee means the payment to management for managing, not the total payment, for services and facilities use, required of unit owners. We do not see a definition of “fee” in the statutory definitions section, section 718.103, and find no reason why “fee” cannot apply to either situation. Appellee argues that here the management company gets only what is left over, if anything, after all expenses are paid; the company is not as *625 sured of any profit and may even sustain a loss. This is not persuasive, considering that there must be a range within which the management company can reduce expenditures if necessary; and that, while the company has during the subject period relied wholly on the escalation clause, there are written into the contract other bases for increasing the assessments — rises in insurance, taxes or labor costs, for example.' The argument that a contract applying an escalation clause to the entire annual assessments against unit owners is not within the contemplation of the statutory declaration that such a clause is contrary to public policy is unpersuasive.
Appellants’ principal authority is Cole v. Angora Enterprises, Inc., 403 So.2d 1010 (Fla. 4th DCA 1981), affirmed, 439 So.2d 832 (Fla.1983). Appellee urges— and the trial court accepted this argument — that Cove Club Investors, Ltd. v. Sandalfoot South One, Inc., 438 So.2d 354 (Fla.1983), is the correct authority. The Florida Supreme Court’s opinions in these cases were issued on the same day.
In Cove Club Investors there was nothing to show that the petitioner, the lessor, who was not the developer of the condominium, had agreed to be bound by the Declaration or the Condominium Act. At issue in Cove Club Investors was whether section 718.401(8), Florida Statutes (1977), applied. That subsection sets forth provisions relating to a unit owner’s defenses against enforcement of a lien arising out of nonpayment of rent under a recreational lease, and other actions respecting obligations of either party under such a lease. It was held the lessor was not subject to the provisions of that statutory subsection.
In Cole, on the other hand, the declaration of condominium expressly incorporated the Condominium Act and subsequent amendments to that Act; the declaration incorporated the recreational lease, and the developer was the lessor. In that case, the applicability of both section 718.401(4) and section 718.401(8)(a) was at issue. They were found to apply.
We believe appellants are correct. The facts of this case are very similar to those of Cole. The fact that here the management company is a separate entity from the developer is of no significance when the management agreement in its terms incorporates the condominium declaration. In the instant case the trial court found the management company had not agreed to be bound by the language of the declaration respecting the Condominium Act. We believe this is incorrect.
Finally, appellee puts stock in the fact its motion for summary judgment was bolstered by the affidavit of David Yorra, an officer who represented the developer as to the declaration and both the management company and the respective associations as to the management agreement. It particularly calls attention to his conclusion about the effect of a finding favorable to appellants.
The present issue is one of law. No one contends that the declaration of condominium and the management agreement the court had before it are not authentic. In fact, appellee relies on copies of the same documents. The language indicates a viable cause of action existed under plaintiffs’ count I. The Yorra affidavit can not overcome what is clear on the face of the pertinent documents.
There is also an affidavit of the attorney who prepared those documents, expressing what were his and his clients’ intentions at the time. He at least implies that the critical language that has the effect of incorporating in the agreement subsequent Condominium Act amendments is boilerplate. Obviously, when the language is clear and when it found its way into the management agreement, or into the condominium declaration which is incorporated in the agreement, by the hand of appellee or its counsel, and when the unit owners played no role in wording the agreement to which they subsequently acceded, the failed intentions of the management company or its lawyer are of no consequence.
The management company supplied the language that effectively waives its constitutional' protection against state impairment of the provisions of the contract. By *626 their language, the documents incorporate the subsequently enacted statutory amendment which declares escalation clauses, based on a CPI, in fee provisions of contracts for condominium management, to be contrary to public policy.
LETTS and STONE, JJ., concur.